O’Neill, J.,
dissenting.
{¶ 34} I respectfully dissent.
{¶ 35} This case clearly demonstrates the impenetrable fog that almost all senior citizens venture into when they attempt to protect their worldly savings from the financial disaster known as assisted living. This case is not about the Atkinson family, although their name is on the caption. Both of the Atkinsons have died since this suit began. Were they alive today, they would undoubtedly regret their attempt to place their $53,750 ranch home into a revocable trust, then into the name of only one spouse, and then into the name of the “community” spouse. No, this case presents a genuine opportunity for this court to provide guidance to countless Ohioans who follow in their footsteps.
{¶ 36} I would hold that the transfer of a home between spouses is not an improper transfer at any time prior to the, granting of Medicaid eligibility, period. First, it is critical to note that there is explicit language in federal law and the Ohio Administrative Code permitting transfer of the home between spouses. Second, the house is not a countable resource for purposes of computing the community-spouse resource allowance (“CSRA”). And third, the revocable-trust language in the federal CSRA law excludes the transfer of the home from the definition of improper transfer. It is that simple. What this family did is and was permitted by state and federal law.
{¶ 37} The regulatory framework clearly states that the transfer of the home between spouses is not an improper transfer. 42 U.S.C. 1396p(c)(2)(A)(i) expressly provides that a spouse is not ineligible for Medicaid for transferring a home to the other spouse. And Ohio Adm.Code 5160:l-3-07(E) expressly states that a transfer of the home between spouses is not an improper transfer. The majority opinion acknowledges that the Medicare Catastrophic Coverage Act permits the community spouse to reserve certain income and assets to meet the minimum monthly needs of the community spouse when the institutionalized spouse becomes eligible for Medicaid. Despite this acknowledgment and despite the plain language of 42 U.S.C. 1396p(c)(2)(A)(i) and Ohio Adm.Code 5160:1-3-07(E) explicitly stating that the transfer of the home from one spouse to the other *80 is not an improper transfer, the majority holds that the transfer of the Atkinsons’ home was an improper transfer to the extent that it was in excess of the CSRA. It was not. The majority concludes and holds that “pursuant to the supersession clause, 42 U.S.C. 1396r-5, 42 U.S.C. 1396p does not apply to this case.” Majority opinion at ¶ 24. I disagree.
{¶ 38} In Hughes v. McCarthy, 734 F.3d 473 (6th Cir.2013), the Sixth Circuit considered whether the transfer of an asset (an annuity) by the institutionalized spouse after institutionalization but before the initial eligibility determination is improper under 42 U.S.C. 1396r—5(f)(1) because the transfer exceeds the CSRA, even though it was for the sole benefit of the community spouse under 42 U.S.C. 1396p(c)(2)(B)(i). As here, the Ohio Department of Job and Family Services (“ODJFS”) argued that a transfer of assets in excess of the CSRA, even if made before the determination of eligibility, is improper because 42 U.S.C. 1396r-5(a)(1) states that “the provisions of this section supersede any other provision of this subchapter * * * which is inconsistent with them,” which includes 42 U.S.C. 1396p(e)(2)(B)(i).
{¶ 39} The federal appellate court disagreed. The court noted that the language of 42 U.S.C. 1396r-5(f)(1) refers only to transfers after the initial determination of eligibility while saying nothing about transfers before that date or penalties for such transfers. Thus, (f)(1) does not supersede 1396p(c)(2)(B)(i), as there is no inconsistency. Id. at 479.
{¶ 40} The federal court held that in order to avoid rendering 42 U.S.C. 1396p(c)(2)(B)(i) superfluous, the provisions must be viewed as operating at distinct temporal periods. Thus, when assets are transferred to the community spouse for the sole benefit of that spouse, 42 U.S.C. 1396p(c)(2)(B)(i), before the institutionalized spouse is determined to be eligible for coverage, the transfer provision of 42 U.S.C. 1396p(c)(2) controls, and the transfer is not improper. Hughes at 480, quoting Morris v. Oklahoma Dept. of Human Servs., 685 F.3d 925, 938 (10th Cir.2012). See also Koenig v. Dungey, 2014-Ohio-4646, 19 N.E.3d 1006 (1st Dist.) By contrast, when the transfer occurs after the institutionalized spouse is deemed eligible for coverage, 42 U.S.C. 1396r — 5(f)(1) controls, and the transfer is improper if it exceeds the CSRA. That is not what happened here.
{¶ 41} In this case, we are presented with a transfer of the marital home between spouses prior to the initial determination of Medicaid eligibility. Specifically, Marcella Atkinson was institutionalized on April 25, 2011. She transferred the home to her husband on August 9 of that year. Her eligibility for Medicaid was approved seven weeks later, on September 28. Under both federal and Ohio law, any transfer of the home from the institutionalized spouse to the community spouse before Medicaid eligibility is determined does not affect the eligibility of the donor spouse, provided that the transfer is for the sole benefit of the *81 receiving spouse. 42 U.S.C. 1396p(c)(2)(A); Ohio Adm.Code 5160:1-3-07(E)(1)(a). It is after September 28, 2011, and not before, that the limitations in 42 U.S.C. 1396r — 5(f)(1) on transfers exceeding the CSRA apply.
{¶ 42} Suspending for a moment my disagreement with the majority’s pronouncement that 42 U.S.C. 1396p does not apply in this case, the majority’s analysis fails based on the application of 42 U.S.C. 1396r-5 alone. This is because the home is explicitly excluded from the definition of “resources” for purposes of establishing the CSRA. 42 U.S.C. 1396r-5(c)(5)(A) and 42 U.S.C. 1382b(a). Accordingly, it was error for ODJFS to include the value of the home in the calculation of the CSRA in the first place. It makes no difference that the home was in the revocable trust when the CSRA was established. The facts of this case demonstrate that the Atkinsons retained every right, title, and interest in their home, both legal and equitable, including the power to place the home in and remove the home from the revocable trust — -hence the term “revocable.” Thus, the Atkinsons have always owned the home, whether it was held outright or in trust. I would note here that even including the dollar value of the home in the CSRA, Raymond’s CSRA of $49,160 did not exceed the maximum federal statutory limit of $60,000 for a CSRA under 42 U.S.C. 1396r-5(f)(2)(A)(ii).
{¶ 43} Moreover, 42 U.S.C. 1396r-5 specifically states that trust income shall be considered income available to each spouse and shall be attributed in accordance with 42 U.S.C. 1396p. The revocable-trust language in 42 U.S.C. 1396p(d) provides that the corpus of the trust shall be considered resources available to the individual, that payments from the trust shall be considered income available to the individual, and that any other payments from the trust shall be considered a disposition by the individual for purposes of subsection (c). Subsection (c) of 42 U.S.C. 1396p states that the transfer of the home between spouses does not create ineligibility for Medicaid. 42 U.S.C. 1396p(c)(2)(A)(i). My view is that these provisions are consistent and should be applied consistently with each other. Read together, the applicable provisions of federal and state law and regulations demand that the transfer of the residential home cannot affect Mrs. Atkinson’s eligibility for Medicaid, regardless of the revocable trust.
{¶ 44} Oral arguments were presented in this case on August 20, 2014. Since that time, the United States District Court for the Southern District of Ohio granted a preliminary injunction prohibiting ODJFS “from interpreting and implementing [Ohio regulations] to impose restrictive coverage upon [the plaintiffs in that case] due to the transfer of community resources * * * for the sole benefit of their respective community spouse[s] * * * after the date of institutionalization but before the institutionalized spouse’s Medicaid eligibility is or was determined.” Wagner v. McCarthy, S.D. Ohio No. 1:14cv00648, 2014 WL 4805284, *1 (Sept. 26, 2014). ODJFS was further enjoined from taking any *82 position inconsistent with the decision in Hughes v. McCarthy, 734 F.3d 473, in future proceedings involving the plaintiffs’ Medicaid applications.
Calfee, Halter & Griswold, L.L.P., Maura L. Hughes, and Alexander B. Reich; and Cooper, Adel & Associates, L.P.A., Thom L. Cooper, Mitchell J. Adel, and Nathan T. Simpson, for appellant.
Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Stephen P. Carney, Deputy Solicitor, and Amy R. Goldstein and Rebecca L. Thomas, Assistant Attorneys General, for appellee.
{¶ 45} Thereafter, ODJFS repealed several administrative rules that were applied in the course of the procedural history of this case. Notably, the list of repealed rules includes the rule that required the deed of the home to be in the individual’s name, Ohio Adm.Code 5160:1-3-31, “Medicaid: treatment of the home,” and the Ohio trust rule, Ohio Adm.Code 5160:1-3-27.1, “Medicaid: trusts.” The list of repealed rules also includes Ohio Adm.Code 5160:1-3-36.1, “Medicaid: resource budgeting methodology for institutionalized individuals with a spouse in the community,” which is the rule the majority orders the trial court to apply to this case on remand. In addition to my disagreement with the majority’s legal conclusions, I am troubled that this court would remand a case for application of a rule that no longer exists.
{¶ 46} It is clear that the law treats the marital home very carefully to prevent spousal impoverishment at the end of life. And that is the public policy we should be embracing. Based on the plain language of the federal statutes and the Ohio Administrative Code, as well as the holding of the United States Court of Appeals for the Sixth Circuit in Hughes v. McCarthy, 734 F.3d 473, I would hold that the transfer of the home between spouses prior to Medicaid eligibility being established is not an improper transfer and is not subject to the CSRA cap. I dissent.
O’Connor, C.J., and Lanzinger, J., concur in the foregoing opinion.